# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT D. ORR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | Case No. 10-1303-CM |
| ALBERT A. RIEDERER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* removal action, claiming that defendant was negligent, engaged in misconduct, and violated fiduciary duties when he acted as Special Master administering and managing the operations and finances of Brooke Capital Corporation ("Brooke"). Specifically, plaintiff brings six counts against defendant: Count I: gross negligence; Count II: intentional misconduct; Count III: breach of fiduciary duties; Count IV: unjust enrichment; Count V: tortious interference with contract; and Count VI: tortious interference with prospective business advantage. Under Counts I and II, plaintiff seeks recovery of $19 million for two loans that plaintiff personally guaranteed. Under Counts III through VI, plaintiff seeks recovery of damages in excess of $75,000. The case is now before the court on Defendant Albert A. Riederer's Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim (Doc. 16). Defendant asks the court to dismiss the case for three reasons: (1) plaintiff lacks standing to bring Counts I through IV; (2) defendant is entitled to quasi-judicial immunity because of his position as Special Master; and (3) plaintiff has not alleged Counts V and VI with adequate specificity. For the following reasons, the court grants defendant's motion in part and denies it in part.

**I.      FACTUAL BACKGROUND**

Plaintiff was, at one time, a shareholder and officer of Brooke. Brooke was a public corporation that franchised insurance agencies. In 2008, Brooke encountered financial difficulties, and creditors began suing Brooke and its affiliated companies. In conjunction with the resulting litigation, Brooke, its affiliates, and plaintiff agreed to appointment of defendant as Special Master. As Special Master, defendant was charged with managing, controlling, operating, and maintaining Brooke's operations and finances. Specifically, through the Consent Order Appointing a Special Master ("Consent Order"), Judge Lungstrum gave defendant a number of "powers and rights to administer and manage the Special Master Estate in a commercially reasonable manner." (Doc. 16-1, at 4.) Under the Consent Order, defendant was allowed to take custody of all records, funds, bank accounts, etc. (*Id.* at 4.) Defendant was allowed to govern the Brooke entities and conduct their business operations; to contract and negotiate on their behalf; to open and close bank accounts in their name; and take a number of other actions consistent with the duties of a Receiver. (*Id.* at 4–5.) But the Consent Order also contemplated continued involvement by the Board of Directors of Brooke; it provided for an executive committee to begin searching for a permanent CEO, for the Board of Directors to appoint by November 15, 2008. (*Id.* at 6.) And the Consent Order gave the Special Master other types of duties, too, including "investigat[ing] the claims and other matters raised by the parties" and facilitating the resolution of claims and exchange of information. (*Id.* at 7–8.) Finally, the Consent Order also specified that:

> Except for an act of gross negligence or intentional misconduct, the Special Master and all persons engaged or employed by him shall not be liable for any loss or damage incurred by any person or entity by reason of any act performed or omitted to be performed by the Special Master or those engaged or employed by him in connection with the discharge of their duties and responsibilities in connection with the business and operations of the Special Master Entities.

(*Id.* at 8–9.) Plaintiff claims that defendant exceeded the scope of his duties as Special Master,

leading to the downfall of Brooke and significant loss of money to plaintiff.

## II. STANDARD OF REVIEW

The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). When evaluating a Rule 12(b)(6) motion, the court may consider not only the contents of the complaint, but also the contents of any attached exhibits. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). Because of plaintiff's *pro se* status, the court affords him some leniency in construing his complaint. *Asselin v. Shawnee Mission Med. Ctr., Inc.*, 894 F. Supp. 1479, 1484 (D. Kan. 1995) (citation omitted). The court may not, however, assume the role of advocate for plaintiff simply

because he is proceeding *pro se*. *Hall*, 935 F.2d at 1110. The court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citations omitted). Nor should the court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citation omitted).

## III. DISCUSSION

### A. Standing

Defendant first argues that plaintiff lacks standing to bring the claims for gross negligence, intentional misconduct, breach of fiduciary duties, and unjust enrichment. Plaintiff was a shareholder of Brooke. He also was a personal guarantor on two of Brooke's loans. As a shareholder, plaintiff may only bring a suit as an individual under certain circumstances—"if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Richards v. Bryan*, 879 P.2d 638, 646–47 (Kan. Ct. App. 1994) (citations omitted). Otherwise, the action should be brought as a derivative action, which is an action brought by shareholders on behalf of the corporation. *See id.* at 646.

Plaintiff argues that his claims are proper individual claims because he seeks damages for money he lost as a result of being a personal guarantor of the loans. According to plaintiff, this injury is "distinct and disproportionate." A number of courts, however, disagree with plaintiff. Rather, the loss to a guarantor is treated as an indirect loss—one that would not have happened without direct injury to the corporation. *See, e.g., Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586 (LAK) (GWG), 2010 WL 2976199, at *6–*7 (S.D.N.Y. July 26, 2010) (analyzing Delaware

-4-

law and concluding that the claims of a guarantor are derivative of the claims of a corporation)[1]; *Nicholson v. Ash*, 800 P.2d 1352, 1357 (Colo. App. 1990) (determining that the plaintiff could not recover for losses sustained because of a loan guaranty, as those losses were based on the plaintiff's status as a creditor—not a stockholder); *Adair v. Wozniak*, 492 N.E.2d 426, 428 (Ohio 1986) (holding that the plaintiffs did not have an individual right of action when a loss of corporate assets ultimately caused them to be liable on loan guaranties); *Wells Fargo Ag Credit Corp. v. Batterman*, 424 N.W. 2d 870, 874 (Neb. 1988) ("By itself, a shareholder's status as a guarantor for the debt of the corporation in which the shareholder owns stock does not entitle the shareholder to maintain an action against a third party for injury to the corporation."); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 641 (9th Cir. 1988) ("Any harm to the Sparlings due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation. Thus, this status does not give the Sparlings standing.").

Plaintiff cites three cases in support of his position, but those three cases are distinguishable from the case at hand. In *Buschmann v. Professional Men's Association*, the court found a suit by the plaintiff proper because the plaintiff and defendant were contracting parties to a loan guaranty. 405 F.2d 659, 660–61 (7th Cir. 1969). In *Sacks v. American Fletcher National Bank & Trust Co.*, the court cited *Buschmann* when it denied a motion to dismiss. 279 N.E.2d 807, 812 (Ind. 1972). The court held that a personal loan guaranty could form the basis for a personal cause of action, but again, a contract with the bank (the third party and defendant) was arguably involved. *Id.* And in

---

[1] It appears that Kansas substantive law applies in this diversity case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985) (stating that for tort claims, the court applies the law of the state where the injury is suffered). But Kansas courts often use Delaware law in interpreting the Kansas Corporation Code, as it is based on general Delaware corporate law. *Achey v. Linn County Bank*, 931 P.2d 16, 21 (Kan. 1997).

*Massey v. Merrill Lynch & Co*, the court cited both *Buschmann* and *Sacks* in dicta for the proposition that a shareholder <u>could</u> maintain an individual action against a third party if a contractual agreement existed, "such as a personal exposure on a loan guarantee." 464 F.3d 642, 646 (7th Cir. 2006). Here, plaintiff does not have a personal agreement with defendant that gives plaintiff a separate cause of action. Rather, plaintiff merely had two relationships with Brooke: that of creditor and that of shareholder.

The court determines that plaintiff has not identified claims that are "distinct and disproportionate" to those of other shareholders. Plaintiff's alleged injury—being liable on the personal guaranties—arose as a consequence of defendant's alleged acts to the corporation. It is only because of the corporation's harm that plaintiff suffered harm. In other words, plaintiff's injury is indirect. The corporation is the party with the cause of action, not plaintiff individually.

Plaintiff asks for the opportunity to amend his complaint if the court believes that he should have sought relief on behalf of the corporation instead of himself. The court does not ordinarily grant motions to amend based on requests in briefs. Instead, the proper process is to seek leave to amend in accordance with the court's Local Rules. The court therefore makes no finding on whether amendment would be appropriate.

**B.     Quasi-Judicial Immunity**

Defendant next contends that he is entitled to quasi-judicial immunity in his capacity as Special Master. A court may extend judicial immunity to non-judicial figures when "their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). A court-appointed Receiver may be entitled to quasi-judicial immunity when he is carrying out a court order, because it is "intrinsically associated with a judicial proceeding." *Teton*

*Millwork Sales v. Schlossberg*, 311 F. App'x 145, 150 (10th Cir. 2009). When evaluating whether immunity is appropriate, the court should examine the function being performed. *See id.* (citing *Forrester v. White*, 484 U.S. 219, 227 (1988); *Valdez v. City & County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)). A non-judicial figure may be entitled to immunity when he is "faithfully carrying out the appointing judge's orders. . . ." *Id.* (citation omitted). The rationale behind quasi-judicial immunity is this:

> In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases; and if the court ignores the danger of harassing suits, tensions between receiver and judge seem inevitable.

*T&W Invest. Co., Inc. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978).

But quasi-judicial immunity has boundaries. *Teton Millwork Sales*, 311 F. App'x at 150. Immunity is not appropriate where a non-judicial figure acts outside the scope of his authority. *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990).

The key questions here center around defendant's functions as a Special Master, and whether plaintiff has alleged that he exceeded the scope of his authority. Defendant argues that although the title of his job was "Special Master," his duties were more like those of a Receiver. In one unpublished District of Kansas case, Judge Vratil held a Special Master entitled to judicial immunity. *Sigg v. Dist. Court of Allen County, Kan., 31st Judicial Dist.*, No. 06-2436, 2007 WL 913926, at *7 (D. Kan. Mar. 23, 2007). The Special Master in *Sigg*, however, appears to have taken on a different role than defendant in this case.

Judge Lungstrum granted defendant broad authority in his Consent Order. Many of the duties appear similar to those that might be required of a Receiver. For example, the court gave defendant the authority to "manage, control, operate, and maintain" Brooke and its affiliates in a

"commercially reasonable manner." (Doc. 16-1, at 4.) Other duties are more in the nature of judicial activities, such as "facilitat[ing] the exchange of information between the parties. . . ." (*Id.* at 8.) But, as previously mentioned, even if defendant's judicial-like duties were limited, defendant may be entitled to quasi-judicial immunity if his duties had an "integral relationship with the judicial process." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

The existence of an integral relationship, however, does not automatically entitle defendant to dismissal, as plaintiff has adequately alleged that defendant exceeded the scope of his authority. Moreover, the court finds persuasive the fact that the Consent Order contains a waiver of liability provision with the exception of acts that constitute gross negligence or intentional misconduct. The impact of this provision on any quasi-judicial immunity that defendant may be entitled to—if any—is unclear and has not been addressed by defendant. The inclusion of the provision suggests that the parties did not contemplate that defendant would be entitled to quasi-judicial immunity for his actions.

For these reasons, the court denies defendant's motion to dismiss the tortious interference claims on the basis of quasi-judicial immunity.

## C. Failure to Plead with Specificity

Finally, defendant claims that plaintiff failed to plead his tortious interference claims with adequate specificity. Defendant argues that plaintiff's claims are vague and conclusory, and that defendant is unable to ascertain what plaintiff's "future economic benefit" or "substantial economic gain" would be if he had continued a relationship with Brooke.

The court concludes that while plaintiff's allegations regarding these claims could have been more specific, considering the allegations as a whole, plaintiff has met the pleading standards required by *Iqbal*.

**IT IS THEREFORE ORDERED** that Defendant Albert A. Riederer's Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim (Doc. 16) is granted in part and denied in part.

Dated this 21st day of December 2010, at Kansas City, Kansas.

>  **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**